```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
─────────────────────────────────────────

JAMEL PURNELL,

                Plaintiff,         22-cv-5956 (JGK)

    - against -                MEMORANDUM OPINION AND ORDER

CAPTAIN CLIVE WILLIAMS, ET AL.,

                Defendants.

─────────────────────────────────────────

**JOHN G. KOELTL**, District Judge:

    The pro se plaintiff, Jamel Purnell, a detainee in the custody of the New York City Department of Correction ("DOC"), brought this action pursuant to 42 U.S.C. § 1983, alleging principally that, during the plaintiff's pretrial detention at Rikers Island, DOC officers used excessive force against the plaintiff while transferring him between cells. The correction officers ("COs") named as defendants are Captain Clive Williams, Jamal Evans, George Almonte, Richard Hilaire, Adrian Mills, Alex Holland, Philip Tancora, Milton Hossen, Nicholas Devecchis, and Munihin Iddris. The plaintiff also sued the City of New York ("the City"), alleging liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

    The defendants now move for summary judgment dismissing this action. For the following reasons, the defendants' motion is **granted**.

1

**I.**

**A.**

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).[1] "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the movant meets that burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

2

587 (1986). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

In determining whether summary judgment is proper, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec., 475 U.S. at 587. But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). "Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party." Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007).[2]

Courts should afford pro se litigants special solicitude on motions for summary judgment. See Graham v. Lewinski, 848 F.2d

---

[2] Although Zellner involved a motion for judgment as a matter of law, it is well-established that "the standard for granting summary judgment mirrors the standard for judgment as a matter of law." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).

3

342, 344 (2d Cir. 1988). Courts should "read the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). This liberal pleading standard, however, "does not relieve [the] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003). "[A] pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995).

**B.**

Local Rule 56.1 requires the party moving for summary judgment to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Loc. Civ. R. 56.1(a). Local Rule 56.1 also requires the party opposing a motion for summary judgment to submit a responsive Rule 56.1 statement that includes "a correspondingly numbered paragraph . . . responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Loc. Civ. R. 56.1(b). Local

4

Rule 56.1 warns that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Loc. Civ. R. 56.1(c). "Generally, a plaintiff's failure to respond [to] or contest facts set forth in a Rule 56.1 statement constitutes an admission of those facts, and those facts are accepted as being undisputed." Day v. MTA N.Y.C. Transit Auth., 17-cv-7270, 2021 WL 4481155, at *9 (S.D.N.Y. Sept. 30, 2021).

Local Rule 56.2 requires any represented party moving for summary judgment against a pro se litigant to file a separate document titled "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment." Loc. Civ. R. 56.2. The form of this notice is contained in the rule and warns the pro se litigant that his claims might be dismissed if he does not submit documents "required by Rule 56(c) of the Federal Rules of Civil Procedure and by Local Civil Rule 56.1." Id.

When the moving party complies with Local Rule 56.2, "[p]ro se litigants are not excused from meeting the requirements of Local Rule 56.1." See Liverpool v. Davis, 442 F. Supp. 3d 714, 723 (S.D.N.Y. 2020). But even where a pro se party fails to comply "with the Local Rules, a court retains discretion to

5

consider the substance of the plaintiff's arguments." Id. In addition, before granting summary judgment based on admitted facts contained in the moving party's Rule 56.1 statement, the Court "must be satisfied that the moving party's assertions are supported by the record." Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

### C.

In moving for summary judgment, the defendants filed a Rule 56.1 statement ("D.56.1"). ECF No. 66. The defendants also filed the notice to pro se litigant required under Local Rule 56.2. ECF No. 67. The plaintiff, however, did not submit a Rule 56.1 statement in response to the D.56.1, and also failed to submit any evidence. Instead, the plaintiff filed only a one-page response restating the allegations made in his complaint (ECF No. 2) and amended complaint (ECF No. 47). ECF No. 73.

The Court has independently reviewed the evidence in the record and concludes that the facts asserted in the D.56.1 are substantially supported by the record, including videos of the use of force incident at the center of this case. Therefore, the facts set forth in the D.56.1 are deemed admitted. However, the Court affords the pro se plaintiff special solicitude and considers the substance of the plaintiff's arguments.

**II.**

The following facts are undisputed unless otherwise noted. Because the facts set forth in the D.56.1 are deemed admitted, the plaintiff's unsupported contrary assertions are omitted.

**A.**

On July 6, 2020, the plaintiff was placed in pretrial detention in the custody of the DOC and housed at the Anna Marie Kross Center ("AMKC"), a jail located at Rikers Island in the Bronx, New York. See D.56.1 ¶ 1.[3] Upon arrival, the plaintiff was placed in an intake cell. See id.

Around 12:00 a.m. on July 7, 2020, to facilitate moving the plaintiff from the intake cell to a housing area, Captain Williams instructed the plaintiff to "turn around and put your hands behind your back please." See id. ¶¶ 2-3; Saleemi Decl., Exh. D, ECF No. 68-4 (video of incident). The plaintiff did not comply. D.56.1 ¶ 4. Captain Williams directed the plaintiff to step out of the intake cell and gather his property. Id. ¶ 5. The plaintiff did not comply. Id. ¶ 6. Captain Williams repeated the same direction three more times. Id. ¶ 7.

The plaintiff eventually stepped out of the intake cell and said, "I'm not going nowhere." Id. ¶ 8. Captain Williams, then

---

[3] The D.56.1 states that the plaintiff was incarcerated and housed at the AMKC on July 7, 2020; however, the record shows that the plaintiff arrived at the AMKC on July 6, 2020. See, e.g., Saleemi Decl., Exh. B at *5, ECF No. 68-2.

accompanied by the other CO defendants, instructed an officer to secure the plaintiff and handcuff him. Id. ¶ 9. The plaintiff refused to be handcuffed, turned his back to the COs, and walked away from them. Id. ¶¶ 10-11. Attempting to handcuff the plaintiff, CO Devecchis grabbed the plaintiff's arms from behind and held them in a hugging motion. Id. ¶ 12. COs Hossen, Mills, and Hilaire attempted to secure the plaintiff's legs. Id. ¶ 13. CO Holland grabbed the plaintiff's left arm. Id. ¶ 14. At that point, the plaintiff was instructed to turn around. Id. ¶ 15. The plaintiff refused that request and resisted being handcuffed. See id. ¶ 16; Saleemi Decl., Exh. D. The COs then pulled the plaintiff to the ground. See D.56.1 ¶ 17; Saleemi Decl., Exh. D.

While on the ground, the plaintiff continued to resist the COs' efforts to handcuff him by putting his hands underneath his chest and lying on top of his arms. Id. ¶¶ 18-19. After a brief struggle, the COs handcuffed the plaintiff. Id. ¶ 20. During and after this struggle, the plaintiff said several times that he could not breathe; however, none of the COs were applying any pressure to the plaintiff's head, neck, or upper back area. Saleemi Decl., Exh. D.

Once in handcuffs, the plaintiff asked for medical attention. Id. ¶ 21. Because the plaintiff refused to walk, he was transported on a gurney to the clinic. Id. ¶ 22. About eight

8

minutes after being handcuffed, the plaintiff was examined by a doctor. Saleemi Decl., Exh. D.[4] The doctor noted that the plaintiff suffered "no serious injury." D.56.1 ¶ 24.

After the evaluation, the plaintiff was placed back on the gurney and transported into the hallway. Id. ¶ 25. While on the gurney, the plaintiff's body started to shake. Id. ¶ 26. The COs promptly took the plaintiff back to the clinic. Id. ¶ 27. The plaintiff was examined for the second time and cleared for transport to his housing area. Id. ¶ 28.

At around 6:00 p.m. on July 7, 2020, the plaintiff called 311 and submitted a complaint about the COs' use of force during the early morning hours. Saleemi Decl., Exh. H at *2-5, ECF No. 68-8; id., Exh. B at *13-14, ECF No. 68-2. Filing a grievance or calling in a 311 complaint is the first step in the DOC's Inmate Grievance Procedures, which provides for three levels of administrative appeals. D.56.1 ¶ 33. On July 15, 2020, the plaintiff's 311 complaint was found to be unsubstantiated. Saleemi Decl., Exh. H at *12-14; id., Exh. B at *13-14. The plaintiff never pursued an administrative appeal of that determination. See Saleemi Decl., Exh. H at *12-14; id., Exh. B at *13-14.

---

[4] Although the D.56.1 states that the plaintiff was examined by a doctor about six minutes after the plaintiff was handcuffed, the video reflects that the time interval was closer to eight minutes. Compare D.56.1 ¶ 23, with Saleemi Decl., Exh. D.

Between July 9, 2020, and July 24, 2020, the plaintiff returned to the clinic several times. D.56.1 ¶¶ 29, 31. During these visits, the plaintiff did not complain about any injuries resulting from the COs' use of force on July 7, 2020, and did not receive any treatment for the injuries that he claims he suffered during that incident. Id. ¶¶ 30, 32.

**B.**

By complaint signed on June 8, 2022, the plaintiff brought this action pursuant to 42 U.S.C. § 1983 against the DOC, "Captain Williams," and six John Doe officers. ECF No. 2. On July 28, 2022, the Court dismissed the plaintiff's claims against the DOC and liberally construed the complaint as asserting claims against the City. ECF No. 6. Pursuant to Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997), the Court directed the City to identify the John Doe defendants. ECF No. 6. On November 25, 2022, the City responded to the Valentin order and identified the COs that were involved in the use of force on July 7, 2020. ECF No. 16.

On September 6, 2023, the defendants moved for summary judgment for the first time. ECF No. 34. On December 13, 2023, the Court directed the plaintiff to file an amended complaint. ECF No. 44. In view of the pending amendment, the Court also denied the defendants' first motion for summary judgment without prejudice to the defendants' ability to move for summary

judgment again after the plaintiff filed an amended complaint. See ECF No. 45. On December 29, 2023, the plaintiff filed the amended complaint. ECF No. 47. On October 15, 2024, the defendants filed this motion for summary judgment. ECF No. 65.

### III.

The defendants move for summary judgment, contending that: (1) the plaintiff's § 1983 claims alleging the use of excessive force should be dismissed because the officers used reasonable force in handcuffing and transporting the plaintiff, and the individual COs are entitled to qualified immunity in any event; (2) the plaintiff failed to exhaust administrative remedies for his deliberate indifference claims, and the individual COs were not deliberately indifferent to a serious medical need in any event; and (3) the plaintiff failed to establish that the City is liable under Monell. Each argument is addressed in turn.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). To prevail on a § 1983 claim, the plaintiff must show that he was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person acting under the color of state law. See

Gomez v. Toledo, 446 U.S. 635, 640 (1980); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004).

### A.

The defendants first move for summary judgment dismissing the plaintiff's excessive force claims brought under § 1983. The plaintiff contends that the COs used excessive force while removing him from the intake cell at the AMKC, but the plaintiff has offered no evidence in support of that assertion.

Because the plaintiff claims that excessive force occurred while he was in pretrial detention, the Due Process Clause of the Fourteenth Amendment applies. See Kingsley v. Hendrickson, 576 U.S. 389, 400-01 (2015). To prevail on a Fourteenth Amendment claim alleging excessive force brought under § 1983, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. at 396-97. Several factors are relevant to this reasonableness inquiry, including: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

In this case, the evidence indisputably shows that the force purposely used against the plaintiff was objectively

12

reasonable. Before the use of force occurred, there was a legitimate need for the COs to use force because the plaintiff had repeatedly refused to comply with Captain Williams's orders. D.56.1 ¶¶ 2-8. During the use of force, the COs attempted to limit the amount of force required by repeatedly ordering the plaintiff to comply. See id. ¶¶ 9-16. The plaintiff refused those orders and, once on the ground, resisted the COs' application of handcuffs by laying on top of his arms, necessitating the COs' further use of force. Id. ¶¶ 10-11, 16, 18-19. In short, the force lasted only for the duration needed to secure the plaintiff. Moreover, there is no evidence that the plaintiff suffered anything more than superficial physical injury, which further negates the plaintiff's claim that the force used was excessive. See id. ¶¶ 24, 28. Taken together, these factors indisputably show that the use of force was objectively reasonable. See, e.g., Musaid v. Manka, No. 13-cv-7880, 2016 WL 540806, at *4-5 (S.D.N.Y. Feb. 9, 2016). The defendants' motion for summary judgment dismissing the plaintiff's excessive force claim brought under § 1983 is therefore **granted**.[5]

---

[5] It is therefore unnecessary to reach the affirmative defense of qualified immunity. See Sabino v. Port Authority Police Department, No. 21-cv-5731, 2025 WL 1360677, at *5 (S.D.N.Y. May 7, 2025).

**B.**

The defendants next move for summary judgment dismissing the plaintiff's deliberate indifference claims brought under § 1983, contending that the plaintiff failed to exhaust his administrative remedies. The plaintiff argues that he exhausted his administrative remedies by calling in a 311 complaint.

The Prison Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," or allege excessive force, the denial of adequate medical care, or some other wrong. Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009).[6]

The PLRA also requires "proper exhaustion of administrative remedies, meaning exhaustion in compliance with an agency's deadlines and other critical procedural rules." Lucente v. Cnty. of Suffolk, 980 F.3d 284, 311 (2d Cir. 2020). This includes

---

[6] The defendants have not moved for summary judgment dismissing the claim for use of excessive force based on the failure to exhaust administrative remedies.

14

"using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006).

In this case, the plaintiff argues that he exhausted his administrative remedies by calling in a 311 complaint. But the undisputed evidence shows that calling in a 311 complaint is only the first step in the DOC's Inmate Grievance Procedures, which provides for three levels of administrative appeals. D.56.1 ¶ 33; Saleemi Decl., Exh. I, ECF No. 68-9 (DOC's Directive on Inmate Grievance Procedures), §§ V(A), VI-IX. After the plaintiff's 311 complaint was found to be unsubstantiated, the plaintiff never pursued an administrative appeal of that determination. See Saleemi Decl., Exh. H at *12-14; id., Exh. B at *13-14. Therefore, the evidence indisputably shows that the plaintiff failed to exhaust available administrative remedies. See Woodford, 548 U.S. at 90-91.

In any event, the plaintiff's claims for deliberate indifference to serious medical needs fail on the merits. A pretrial detainee's claims for deliberate indifference are governed by the Due Process Clause of the Fourteenth Amendment. See Darnell v. Pineiro, 849 F.3d 17, 29, 33 n.9 (2d Cir. 2017). To establish a claim for deliberate indifference, a plaintiff must satisfy two prongs: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute

15

objective deprivations of the right to due process, and a 'subjective prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions." Id. at 29. To determine whether the medical condition was "sufficiently serious" to give rise to a constitutional violation, courts consider factors such as "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998); see also Charles v. Orange County, 925 F.3d 73, 86 (2d Cir. 2019) (applying the Chance factors to Fourteenth Amendment claims).

In this case, there is no showing that the plaintiff suffered from a serious medical condition during his detention at AMKC. There is no allegation of a preexisting medical condition, nor anything in the subsequent records alleging that the plaintiff was suffering from a serious medical condition as a result of the July 7, 2020 incident. Indeed, the examining doctor found "no serious injury," and the plaintiff did not complain about any injuries resulting from the COs' use of force on July 7, 2020, in later visits to the clinic. D.56.1 ¶¶ 24, 30, 32. There is also no showing that the defendants acted with

deliberate indifference. The defendant COs acted promptly by taking the plaintiff to see a doctor within minutes of the incident and brought him back to the clinic promptly when he appeared to have a spasm. Id. ¶¶ 23, 27.

Accordingly, there is no evidence to support the plaintiff's contention that the defendant COs were deliberately indifferent to his alleged serious medical needs. These claims therefore must be **dismissed.**

## C.

The defendants next move for summary judgment dismissing the plaintiff's Monell claim against the City. To impose § 1983 liability upon a municipality, the plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injuries. See Monell, 436 U.S. at 694. In the absence of an official policy, "a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials," and "municipal inaction such as the persistent failure to discipline subordinates who violate [individuals'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); Jones v. Town of E. Haven, 691 F.3d 72, 82 (2d Cir. 2012) (observing that there must be "sufficient instances of tolerant awareness by supervisors of abusive conduct to support an inference that they had a policy,

17

custom or usage of acquiescence in such abuse"). However, "isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." Jones, 691 F.3d at 81.

In this case, the plaintiff's failure to support an underlying use of excessive force or deliberate indifference to medical needs dooms his Monell claim. Moreover, the plaintiff has failed either to allege or to provide any evidence that the City either maintained an official policy that caused the plaintiff's alleged injuries or persistently failed to discipline employees who violated individuals' civil rights. See Zahra, 48 F.3d at 685. Accordingly, the plaintiff's claim against the City is **dismissed.**

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motion for summary judgment is **granted.**

The Clerk is directed to enter judgment dismissing this action with prejudice; to close all pending motions; and to close this case. The Clerk is also directed to mail a copy of this Memorandum Opinion and Order to the pro se plaintiff and to note such mailing on the docket.

**SO ORDERED.**

**Dated:**     **New York, New York**
               **July 11, 2025**

                                                           John G. Koeltl
                                         **United States District Judge**